**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| SHEENA WOOD, Individually and for Others Similarly Situated,<br><br>v.<br><br>TURNER MINING GROUP, LLC | Civil No. ________________<br><br>FLSA Collective Action<br>Rule 23 Class Action<br><br>Jury Trial Demanded |

# ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Sheena Wood (Wood) brings this class and collective action to recover unpaid wages and other damages from Turner Mining Group, LLC (Turner).

2. Turner employed Wood as one of its Hourly Employees (defined below) in Arizona.

3. Wood and the other Hourly Employees regularly work more than 40 hours in a workweek.

4. Turner pays Wood and the other Hourly Employees by the hour.

5. But Turner does not pay Wood and the other Hourly Employees for all hours worked, including overtime hours.

6. Instead, Turner requires Wood and the other Hourly Employees to prepare and put on protective clothing and safety gear fundamentally necessary to and intertwined with their job duties, while on Turner's (or its client's) premises, "off the clock" (Turner's pre-shift off the clock policy).

7. Turner does not pay Wood and the other Hourly Employees for the time they spend donning safety gear and protective clothing "off the clock," before their shifts.

8. Additionally, Turner automatically rounds Wood's and the other Hourly Employees' clock in and clock out times to the nearest quarter hour for its own primary benefit and to the detriment of these employees (Turner's "rounding policy").

9. Finally, Turner pays Wood and the other Hourly Employees "per diems" that are not reasonably calculated to reimburse expenses these employees incur but are rather wages for work these employees perform (Turner's "per diem pay scheme").

10. Turner's pre-shift off the clock policy, rounding policy, and per diem pay scheme violate the FLSA by failing to compensate Wood and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

11. Turner thus fails to timely pay all earned wages due on designated paydays and upon termination of employment, in violation of the Arizona Wage Act (AWA).

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14. This Court has general personal jurisdiction over Turner because Turner is an Indiana limited liability company.

15. Venue is proper because Turner maintains its principal office in Bloomington, Monroe County, Indiana, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

16. Turner employed Wood as a heavy equipment operator from approximately August 2025 to April 2026 in Arizona.

17. Throughout her employment, Turner subjected Wood to its pre-shift off the clock policy, rounding policy, and per diem pay scheme.

18. Turner classified Wood as non-exempt and paid her by the hour.

19. Wood brings this class and collective action on behalf of herself and similarly situated Turner employees.

20. Wood's written consent is attached as **Exhibit 1.**

21. The putative FLSA collective is defined as:

> **All hourly employees who worked under Turner's pre-shift off the clock policy, rounding policy, and/or per diem pay scheme during the last 3 years through final resolution of this action (the "FLSA Collective Members").**

22. The putative AWA class of similarly situated employees is defined as:

> **All hourly employees who worked in Arizona under Turner's pre-shift off the clock policy, rounding policy, and/or per diem pay scheme during the last 1 year through final resolution of this action (the "Arizona Class Members").**

23. The FLSA collective Members and the Arizona Class Members are collectively referred to as the "Hourly Employees."

24. Turner is an Indiana limited liability company headquartered in Bloomington, Indiana.

25. Turner can be served with process through its registered agent: **Kayla Baker, 304 W. Kirkwood Ave., Suite 100, Bloomington, Indiana 47404, or wherever she may be found**.

## FLSA COVERAGE

26. At all relevant times, Turner was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

27. At all relevant times, Turner was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

28. At all relevant times, Turner was an "enterprise engaged in commerce or in the

production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cell phones, computers, tools, and personal protective equipment, that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

29. At all relevant times, Turner has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30. At all relevant times, Wood and the other Hourly Employees were Turner's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

31. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

32. Turner touts itself as "a team of experienced mining professionals performing a full spectrum of mining services across North America."[1]

33. To meet its business objectives, Turner employs workers, including Wood and the other Hourly Employees who it staffs to its clients' mining projects.

34. For example, Turner employed Wood as a heavy equipment operator from approximately August 2025 to April 2026 at its client's Mineral Park Mine in Arizona.

35. Turner pays Wood and the other Hourly Employees by the hour.

36. Wood's job duties included operating heavy mobile equipment, such as haul trucks, excavators, water trucks, and dozers on Turner's client's mine site, as well as performing pre-shift and post-shift equipment inspections, and assisting with general mine tasks as needed.

37. Wood's job duties likewise included donning her safety gear and protective clothing, on Turner's premises, before her shifts.

---

[1] https://turnermining.com/ (last visited April 22, 2026).

38. Throughout her employment, Wood recorded her "on the clock" hours using Turner's timekeeping system.

39. Thus, Turner's records reflect the number of "on the clock" hours Wood recorded working each week.

40. Throughout her employment, Wood typically worked approximately 12 hours a day and 4 to 5 days a week (48 to 60 hours in a workweek) "on the clock."

41. But throughout her employment, Turner did not pay Wood for all her hours worked.

42. Instead, Turner subjected Wood to its pre-shift off the clock policy.

43. Specifically, Turner required Wood prepare and put on protective clothing and safety gear (including hard hat, head lamp, dust mask, reflective clothing, steel toed boots, safety glasses, gloves, radio, and tools/tool belt) fundamentally necessary to and inextricable from her mining duties, "off the clock," on Turner's client's premises, and without compensation.

44. This took Wood approximately 30 minutes each workday.

45. Wood could not perform her mining job duties in accordance with Turner's policies, procedures, and expectations without this protective clothing and gear.

46. Indeed, much of the gear Wood utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*.

47. The donning of protective clothing and safety gear was therefore an integral and indispensable work duty for Wood.

48. But under its pre- shift off the clock policy, Turner did not compensate her for the same.

49. Thus, because of its pre-shift off the clock policy, Turner failed to pay Wood overtime wages for all hours worked when she worked in excess of 40 hours in a workweek.

50. Wood and the other Hourly Employees perform their jobs under Turner's supervision

and use materials, equipment, and technology Turner approves and supplies.

51. Turner requires Wood and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

52. Wood's and the other Hourly Employees' work must strictly adhere to the uniform standards Turner put in place.

53. At the end of each pay period, Wood and the other Hourly Employees receive wages from Turner that are determined by common systems and methods that Turner selects and controls.

54. Like Wood, the other Hourly Employees typically work approximately 48 to 60 hours in a workweek "on the clock"

55. But just like Wood, Turner fails to pay them for all their hours worked.

56. Indeed, Turner subjects the other Hourly Employees to the same or similar pre-shift off the clock policy it imposed on Wood.

57. Specifically, just like Wood, Turner requires the other Hourly Employees to don protective clothing and safety gear (including hard hat, head lamp, dust mask, reflective clothing, steel toed boots, safety glasses, gloves, radio, and tools/tool belt) fundamentally necessary and intrinsic to their mining duties, "off the clock," on its (or its clients') premises, and without compensation.

58. And like Wood, much of the gear the other Hourly Employees must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq.*

59. But, like Wood, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before their shifts.

60. Thus, just as with Wood, Turner does not pay the other Hourly Employees for this integral and indispensable work it requires them to perform "off the clock" before their shifts.

61. And, just as with Wood, these job duties take the other Houry Employees approximately 30 minutes each workday.

62. In addition, Turner subjects Wood and its other Hourly Employees to its rounding policy.

63. Specifically, Turner automatically rounds Wood's and the other Hourly Employees' clock in and clock out times to the nearest quarter hour for Turner's primary benefit and to the detriment of these employees.

64. Turner prohibits these employees from clocking in for their shifts more than 7.5 minutes prior to their scheduled start time and prohibits them from clocking out more than 7.5 minutes after their scheduled end time.

65. Turner takes disciplinary action or threatens to do so if Wood and the Hourly Employees clock in after their scheduled start time or before their scheduled end time.

66. Turner requires Wood and the Hourly Employees to perform their regular job duties immediately upon clocking in.

67. By enforcing these policies, Turner ensures that its rounding policy primarily benefits Turner to the detriment of Wood and the other Hourly Employees and that they are denied overtime wages during workweeks in which they work more than 40 hours.

68. Turner fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its (or its clients') premises.

69. And Turner knows, should know, or recklessly disregards whether Wood and the other Hourly Employees routinely perform integral and indispensable work "off the clock" and without compensation, on its or its clients' premises and for Turner's primary benefit.

70. Thus, Turner requires, requests, suffers, or permits Wood and the other Hourly Employees to work "off the clock," without compensation.

71. Despite accepting the benefits, Turner does not pay Wood and the other Hourly Employees for compensable work they perform "off the clock."

72. Thus, under Turner's pre-shift off the clock policy and rounding policy, Wood and the other Hourly Employees are denied overtime wages for compensable work they perform before and after their scheduled shifts, during workweeks they work more than 40 hours.

73. Finally, throughout their employment, Turner has not paid Wood and the other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

74. Instead, Turner paid them under its per diem pay scheme.

75. Specifically, Turner paid Wood and the other Hourly Employees "per diems" that were not reasonably calculated to reimburse expenses they incur.

76. Rather, Turner paid Wood and the other Hourly Employees "per diems" only for days they actually worked.

77. And Wood, for example, commuted to and from her permanent residence to work each workday.

78. Thus, the "per diems" Turner paid Wood and the other Hourly Employees were merely additional wages paid for work they performed.

79. But Turner excluded these "per diems" from Wood's and the other Hourly Employees' regular rates of pay for overtime purposes during workweeks they earned the "per diems" and worked more than 40 hours.

80. Under its pre-shift off the clock policy, rounding policy, and per diem pay scheme, Turner does not pay Wood and the other Hourly Employees overtimes wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek, in violation of the FLSA and AWA.

## Class and Collective Action Allegations

81. Wood brings her claims as a class and collective action on behalf of herself and the

other Hourly Employees.

82. Like Wood, the other Hourly Employees are victimized by Turner's pre-shift off the clock policy, rounding policy, and/or per diem pay scheme.

83. Other Hourly Employees worked with Wood and indicated they were paid in the same or similar manner, performed similar work, and were subject to Turner's same pre-shift off the clock policy, rounding policy, and/or per diem pay scheme.

84. Based on her experiences with Turner, Wood is aware Turner's pre-shift off the clock policy, rounding policy, and per diem pay scheme were imposed on other Hourly Employees.

85. The Hourly Employees are similarly situated in the most relevant respects.

86. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages.

87. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

88. Rather, the Hourly Employees are held together by Turner's pre-shift off the clock policy, rounding policy, and per diem pay scheme, which systematically deprive Wood and the other Hourly Employees of premium overtime wages based on their true regular rates of pay for all hours worked over 40 in a workweek.

89. Turner's failure to pay these employees overtime wages at the required premium rates for all hours worked over 40 in a workweek results from generally applicable policies and practices that are not dependent on the personal circumstances of the Hourly Employees.

90. Turner's records reflect the number of hours the Hourly Employees worked "on the clock" each week.

91. Turner's records show it rounded the Hourly Employees' hours to the nearest quarter hour.

92. Turner's records also show it paid the Hourly Employees per diems each workweek.

93. And Turner's records show that it excluded the Hourly Employees' per diems when calculating their regular rates of pay for overtime purposes.

94. The back wages owed to Wood and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

95. Even if the issue of damages were somewhat individual in character, the damages can be calculated objectively by reference to Turner's records.

96. Therefore, the issue of damages does not preclude class or collective treatment.

97. Wood's experiences are typical of the experiences of the other Hourly Employees.

98. Wood has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

99. Wood has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Arizona law.

100. Wood and her counsel will fairly and adequately protect the interests of the Hourly Employees.

101. Wood retained counsel with significant experience handling complex class and collective action litigation.

102. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Turner will reap the unjust benefits of violating the FLSA and AWA.

103. Further, even if some of the Hourly Employees could afford individual litigation against Turner, it would be unduly burdensome to the judicial system.

104. The multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Turner.

105. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

106. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

107. Among the common questions of law and fact are:

a. Whether Turner imposed its pre-shift off the clock policy on the Hourly Employees;

b. Whether Turner's pre-shift off the clock policy deprived the Hourly Employees of overtime wages;

c. Whether Turner engaged in a policy and practice of automatically rounding the Hourly Employees time punches to the nearest quarter hour for its primary benefit;

d. Whether Turner paid per diems to the Hourly Employees;

e. Whether Turner's per diem pay scheme deprived the Hourly Employees overtime wages at the required rates;

f. Whether Turner's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

g. Whether Turner's violations were willful.

108. There are many similarly situated Hourly Employees who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

109. The Hourly Employees are known to Turner and can be readily identified through Turner's business and personnel records.

## TURNER'S VIOLATIONS WERE WILLFUL

110. Turner knew it was subject to the FLSA's overtime provisions.

111. Turner knew the FLSA required it to pay non-exempt employees, including Wood and the other Hourly Employees, overtime wages of at least 1.5 times their regular rates of pay (based on all remuneration) for all hours worked after 40 in a workweek.

112. Turner knew Wood and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Turner's timekeeping system.

113. Turner knew it paid the Hourly Employees according to its pre-shift off the clock policy, rounding policy, and per diem pay scheme.

114. Turner knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

115. Turner knew it required the Hourly Employees to don safety gear and protective clothing on its or its clients' premises "off the clock."

116. Turner knew it rounded the Hourly Employees' clock in and clock out times for its primary benefit and to these employees' detriment.

117. Turner knew it controlled the Hourly Employees work procedures.

118. Turner knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Turner.

119. Turner knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties.

120. Turner knew the Hourly Employees routinely performed this required "off the clock" work for Turner's primary benefit.

121. In other words, Turner knew the Hourly Employees performed compensable work

"off the clock" and without compensation.

122. Turner knew it paid Wood and the other Hourly Employees base hourly rates and "per diems" that were in reality additional wages.

123. Turner knew Wood and the other Hourly Employees regularly worked in excess of 40 hours in a workweek.

124. Nonetheless, Turner intentionally excluded the per diems from the Hourly Employees' regular rates of pay for overtime purposes.

125. In other words, Turner knew, should have known, or recklessly disregarded whether it failed to pay Wood and the other Hourly Employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for their hours worked over 40 in a workweek.

126. Turner's failure to pay Wood and the other Hourly Employees overtime wages at the required premium rates was neither reasonable, nor was its decision not to pay them overtime wages at the required premium rates made in good faith.

127. Turner knew, should have known, or recklessly disregarded whether its conduct violated the FLSA.

128. Turner knowingly, willfully, and/or in reckless disregard carried out its pre-shift off the clock policy, rounding policy, and per diem pay scheme that systematically deprived Wood and the other Hourly Employees of required overtime premium for hours worked in excess of 40 in a workweek.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
## (FLSA COLLECTIVE)

129. Wood brings her FLSA claims as a collective action on behalf of herself and the other FLSA Collective Members.

130. Turner violated, and is violating, the FLSA by employing non-exempt employees, the

Hourly Employees, in a covered enterprise without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 a workweek.

131. Turner's unlawful conduct harmed Wood and the other Hourly Employees by depriving them of the overtime wages they are owed.

132. Accordingly, Wood and the Hourly Employees are entitled to recover the difference between the wages actually paid and the overtime wages earned, plus an equal amount as liquidated damages, as well as attorneys' fees and costs.

## COUNT II
## FAILURE TO PAY EARNED WAGES UNDER THE AWA
## (ARIZONA CLASS)

133. Wood brings her AWA claim on behalf of herself and the other Arizona Class Members pursuant to Fed. R. Civ. P. 23.

134. The conduct alleged violates the AWA. A.R.S. §§ 23-350, *et seq*.

135. At all relevant times, Turner was Wood's and the other Arizona Class Members' "employer" within the meaning of the AWA. *See* A.R.S. § 23-350(3).

136. At all relevant times, Turner employed Wood and the other Arizona Class Members as its covered "employees" within the meaning of the AWA. *See* § 23-350(2).

137. Wood's and the other Arizona Class Members' outstanding earned overtime wages are "wages" within the meaning of the AWA. *See* § 23-350(7).

138. The AWA required employers, like Turner, to timely pay employees, including Wood and the other Arizona Class Members, "all wages due… up to that date" on their regular established paydays. A.R.S. § 23-351(C).

139. The AWA further requires employers, like Turner to timely pay employees, including Wood and the other Arizona Class Members, all earned overtime wages no later than sixteen

days after the end of the most recent pay period. A.R.S. § 23-351(C)(3).

140. The AWA prohibits employers, like Turner, from withholding or diverting any portion of an employee's earned wages. A.R.S. § 23-352.

141. Turner violated, and is violating, the AWA by failing to timely pay, and instead willfully withholding earned overtime wages from Wood and the other Arizona Class Members. *See* A.R.S. §§ 23-351(C)(3) and 23-352.

142. Turner's unlawful conduct harmed Wood and the other Arizona Class Members by depriving them of timely payment of the full overtime wages they are owed.

143. Accordingly, Turner owes Wood and the other Arizona Class Members the difference between the rate actually paid and the required overtime rate, which to date, remains outstanding.

144. Turner is liable to Wood and the other Arizona Class Members for treble damages. *See* A.R.S. § 23-355

145. Finally, Wood and the other Arizona Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## JURY DEMAND

146. Wood demands a trial by jury on all counts.

## RELIEF SOUGHT

Wood, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the FLSA Collective Members allowing them to join this collective action by filing a written notice of consent;

b. An order designating the Arizona Class as a class action pursuant to Fed. R. Civ. P. 23;

c. An order appointing Wood and her counsel to represent the interests of the Arizona Class;

d. An Order pursuant to Section 16(b) of the FLSA finding Turner liable for unpaid overtime wages due to Wood and the Hourly Employees, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Turner liable to Wood and the Arizona Class Members for unpaid earned wages owed under the AWA, plus treble damages;

f. A Judgment awarding Wood and the Hourly Employees all unpaid wages, including overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA and/or AWA;

g. An Order awarding attorneys' fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: April 27, 2026

Respectfully submitted,

**WERMAN SALAS P.C.**

*/s/Douglas M. Werman*
Douglas M. Werman
dwerman@flsalaw.com
77 W. Washington St., Ste 1402
Chicago, IL 60602
Phone: (312) 419-1008
Fax: (312) 419-1025

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
713-877-8788 – Telephone
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR WOOD & THE HOURLY EMPLOYEES**